Opinion issued April 3, 2003












In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00483-CR




ANGEL LEONEL FUENTES, Appellant

v.

THE STATE OF TEXAS, Appellee




On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 889683




MEMORANDUM OPINION
           The State charged appellant with capital murder, and appellant pleaded not guilty. A
jury found appellant guilty as charged, and the trial court assessed punishment at confinement
for life. In his appeal, appellant complains that his conviction depended solely on
accomplice testimony and challenges the admission of photographs of the victim. We affirm. 
BACKGROUND
           Appellant was arrested in connection with the murder of Sheriffa Kissoon after
Kissoon’s body was discovered in the trunk of her car, which had been abandoned in a
wooded area. After his arrest, appellant made a videotaped statement in which he related the
events surrounding Kissoon’s murder. 
           The following facts have been taken from appellant’s videotaped statement, which
was played to the jury. Ameer Mohammed enlisted the aid of Ulises Arteaga, Patrick Selby,
and appellant to rob Kissoon, Mohammed’s step-sister, at her home, where she kept a locked
safe that contained over $10,000. They took duct tape and a gun with them to Kissoon’s
house. According to the plan, Mohammed and appellant would go in the house, and Arteaga
and Selby would act as lookouts. Mohammed went into house first, and then appellant went
inside, hiding the gun in the waist of his pants. At Mohammed’s signal, appellant pulled out
the gun, but didn’t point it at Kissoon. He let her see the gun and told her to get on the
ground. She complied, and appellant gave the duct tape to Mohammed. Mohammed tried
to put the duct tape on Kissoon, but couldn’t. Appellant gave Mohammed the gun, and
appellant duct-taped Kissoon’s hands. Kissoon was screaming, “Why you do this to me?” 
Mohammed dragged the safe into the living room and asked Kissoon for the combination. 
Kissoon told him some numbers, but Mohammed couldn’t open the safe. They were in the
house for about two hours. During this time, Mohammed was kicking Kissoon. Appellant
said, “Let’s get out and go.” But Mohammed replied, “No, I can’t do it; I can’t do it. I gotta
finish her. It’s easy for you. . . . She won’t be able to identify you.” Appellant said, “What
you going to do? . . . There ain’t no point in taking her.” Mohammed replied, “I gotta finish
her off.” Appellant said, “What you gonna do? Shoot her, or what?” Mohammed said, “I
don’t know. Will you help me?” Appellant said, “I’m not gonna help you on that. I gotta
go to work. . . . I told you from day one I’m not gonna kill nobody.” Mohammed threw
Kissoon into the car trunk, and they took Kissoon to Mohammed’s auto repair shop. 
Mohammed took a gold and diamond bracelet from Kissoon’s house, saying, “We could go
pawn it. . . . It’s worth a couple of thousand.” When Mohammed again said he had to get
rid of Kissoon, appellant said, “That’s up to you. You do whatever you want to do.” 
Mohammed said, “Well, I gotta finish her off. She knows too much about me.” Mohammed
started pinching Kissoon’s nose with wire pliers. Kissoon started screaming, and
Mohammed stomped on her face. Appellant heard something crack, and blood started going
everywhere. Appellant held Kissoon’s hands while Mohammed put more duct tape on them. 
Mohammed was going to wrap tape all around her, but appellant told him, “You want to do
it, just duct-tape her hands and make her walk back to the trunk, and once she in the trunk,
you don’t have to pick her up or nothin’, you do what you have to do in the trunk.” After
Kissoon was in the car trunk, Mohammed put a plastic bag over her head and held it on by
putting duct tape around Kissoon’s neck. When Kissoon stopped responding to being
prodded with a stick, Mohammed and appellant discussed where they could take her body. 
They left the shop with Mohammed driving Kissoon’s car and with Kissoon in the trunk,
Arteaga driving Mohammed’s car, and appellant driving his own car. They drove around for
some time, looking for a place to leave Kissoon, and found a wooded area, where they
abandoned the car with Kissoon in the trunk.
DISCUSSION
I.        Accomplice Testimony
           In his first point of error, appellant contends that the evidence was insufficient to
establish his guilt because the conviction depended solely on the testimony of accomplices. 
In reviewing the sufficiency of the evidence corroborating accomplice-witness testimony, an
appellate court must eliminate from consideration the evidence of the accomplice witnesses
and examine the other evidence to determine if it is of an incriminating character that tends
to connect the defendant with the commission of the offense. Castaneda v. State, 682
S.W.2d 535, 537 (Tex. Crim. App. 1984). 
           In this case, the “other evidence” was appellant’s videotaped statement in which he
admitted that he went to Kissoon’s house for the purpose of robbing her and carried a gun
and duct tape into the house. He admitted assisting in duct-taping Kissoon’s wrists at her
house and again at the shop. He admitted that, while they were still at the house, Mohammed
said he intended to “finish her off.” He admitted that Mohammed took Kissoon’s gold and
diamond bracelet when they left her house. Knowing that Mohammed intended to kill
Kissoon, appellant again assisted in duct-taping her wrists and advised Mohammed to have
Kissoon get into the trunk of her car before Mohammed did anything further so that
Mohammad would not have to pick her up and put her in the trunk. After Kissoon was dead,
appellant assisted Mohammed in finding a suitable location to abandon Kissoon’s car with
Kissoon in the trunk. 
           Appellant’s statement was incriminating and connected appellant as a party to
Kissoon’s murder. We hold that appellant’s statement was sufficient corroboration of the
accomplice testimony of Arteaga and Selby. We overrule appellant’s first point of error. 
II.      Gruesome Photographs
           In his second point of error, appellant contends that the trial court erred in admitting
gruesome photographs over appellant’s objection. Appellant specifically complains that
State’s Exhibits 20 through 33 were cumulative and unfairly prejudicial, that their prejudicial
effect outweighed their probative value, and that they should have been excluded upon
appellant’s trial objection. See Tex. R. Evid. 403. Rule 403 provides, 
Although relevant, evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence. 

Id. Factors that may be considered in determining whether the probative value of
photographs is outweighed by their prejudicial effect include the number of photographs
offered, their gruesomeness, their detail, their size, whether they are black and white or color,
whether they are close-ups, whether the body is naked or clothed, the availability of other
means of proof, and the circumstances unique to each individual case. Narvaiz v. State, 840
S.W.2d 415, 429 (Tex. Crim. App. 1992). We may reverse the trial court’s decision
admitting photographs over objection only for an abuse of discretion; that is, when that
decision was outside the zone of reasonable disagreement. Jones v. State, 982 S.W.2d 386,
394 (Tex. Crim. App. 1998). 
           Appellant argues that State’s Exhibits 20 through 33 meet the following Narvaiz
factors: they are gruesome, they are close-ups and reveal details, the original photographs
were in color, and they show the nude body with “vast swaths” of decomposing tissue. 
Appellant discusses the photographs as if all meet these factors equally. 
           State’s Exhibits 20 and 22 through 28 are close-up photographs of Kissoon’s body,
or portions of the body, clothed and lying on the ground after she had been removed from the
trunk of her car. These photographs show, in detail, her wrists and ankles bound with wire
and duct tape and her head covered with a plastic bag secured by duct tape. State’s Exhibits
30 through 33 are medical examiner’s photographs showing the unclothed body from the
head to the pelvis, the neck to the knees, the waist to the feet, and a close-up of the face. 
These 12 photographs are unquestionably gruesome. State’s Exhibit 21 consists of two x-rays, one of feet and ankles bound with wire and one showing wire running from the knees
to the ankles. State’s Exhibit 29 is a photograph of clothing that was removed from the body
and laid out in an orderly manner. We do not consider State’s Exhibits 21 and 29 to be
gruesome. 
           The fact that photographs are gruesome, in color, detailed, and close-up does not
automatically require that they be excluded from evidence. See Chamberlain v. State, 998
S.W.2d 230, 237 (Tex. Crim. App. 1999) (affirming admission of photographs that were
gruesome and in color); Barnes v. State, 876 S.W.2d 316, 326 (Tex. Crim. App. 1994)
(affirming admission of photographs that were gruesome, in color, detailed, and close-up and
showing some nudity). Like the photographs in Chamberlain and Barnes, the photographs
in this case depicted the reality of the brutal murder and showed details of injuries. 
Furthermore, the photographs corroborated much of appellant’s description, in his video-taped statement, of the torture and murder of Kissoon. 
           Appellant also argues that Exhibits 20 through 33 were cumulative because Exhibits
10 and 19, which show the body on the ground after being removed from the car trunk, and
Exhibit 9, which, according to appellant, “appears to be a close-up of the crotch area of the
corpse.” Appellant’s sole argument regarding the cumulative nature of the photographs is,
“They are cumulative in the worst sense, especially the most repugnant photo of the
complainant’s head.” Therefore, this complaint is inadequately briefed and is waived. See
Narvaiz, 840 S.W.2d at 429. 
           We hold that the trial court did not abuse its discretion in overruling appellant’s
objection to the photographs and admitting them into evidence.
           We overrule appellant’s second point of error. 
CONCLUSION
           We affirm the judgment.
 
                                                                  Sam Nuchia
                                                                  Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Hanks.
Do not publish. Tex. R. App. P. 47.4.