JOhnny Carl Kellis v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-347-CR

     JOHNNY CARL KELLIS, JR.,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 23rd District Court
Brazoria County, Texas
Trial Court # 39,595
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Johnny Carl Kellis, Jr., appeals his conviction by a jury of the offense of indecency with a
child by contact. The jury assessed his punishment at ten years' imprisonment in the Texas
Department of Criminal Justice, Institutional Division, and a $10,000 fine. Upon the
recommendation of the jury, Kellis was placed on community supervision for 10 years. He
contends in two issues that the evidence is legally and factually insufficient to support his
conviction and that the State improperly argued that he should be punished for acts that occurred
more than 20 years ago.
      Kellis contends in issue one that the evidence is legally and factually insufficient to support
his conviction. In reviewing the legal sufficiency of the evidence to support a conviction, we view
all the evidence in the light most favorable to the verdict. Cardenas v. State, 30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000); Narvaiz v. State, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992). The
critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. McDuff v. State, 939
S.W.2d 607, 614 (Tex. Crim. App. 1997). This standard gives full play to the responsibility of
the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct.
2781, 2789 (1979).
      In reviewing a challenge to the factual sufficiency of the evidence, we begin with the
assumption that the evidence is legally sufficient. See Santellan v. State, 939 S.W.2d 155, 164
(Tex. Crim. App. 1997). We must view all the evidence without the prism of the "in the light
most favorable to the prosecution" construct. See Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996). We ask "whether a neutral review of all the evidence, both for and against the
finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in
the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof." Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see
also Goodman v. State, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001).
      We must also remain cognizant of the factfinder's role and unique position — one that the
reviewing court is unable to occupy. Johnson, 23 S.W.3d at 9. The jury determines the
credibility of the witnesses and may "believe all, some, or none of the testimony." Chambers v.
State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). It is the jury that accepts or rejects
reasonably equal competing theories of a case. Goodman, 66 S.W.3d at 287. A decision is not
manifestly unjust as to the accused merely because the factfinder resolved conflicting views of
evidence in favor of the State. Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997).
      K. B., Kellis's stepdaughter, testified that on the occasion in question she was sleeping in a
bed with her mother on one side of the bed, Kellis in the middle, and her on the other side of the
bed, next to Kellis. She indicated that she awoke to find Kellis with his hand inside her panties,
moving it up and down on her vagina, while he was "jacking off." She stated that she is below
the age of 17 and was not the spouse of Kellis. K. B. acknowledged that March 15, 2000, the date
she originally stated was the date the event occurred, was not correct and that this event most
likely occurred on April 29, 2000. She said that she arrived at that date by looking at her father's
calendar, which showed what days she was at her mother's house. K. B. also acknowledged that
in her original statement she said "private part," instead of "vagina," and that Officer Worsham,
the investigating police officer, had inserted the word "vagina" into her statement.
      K. B. testified that she could see Kellis’s hand "pretty good," but she acknowledged that the
lights and television in the room were off and that there was no open window. She indicated that
she was not sure where the light was coming from, but that it was probably coming from the
kitchen, the living room, or "something." She also stated that Kellis could have been asleep when
it happened.
      Don Worsham, an investigating officer with the West Columbia Police Department, testified
that on September 11, 2000, he received a call from Ray Beach, K. B.'s father, concerning this
event. He indicated that he, accompanied by a victim advocate, obtained from K. B. a handwritten
copy in her words of what had occurred. He stated that Ray Beach's wife provided him with a
written statement that she had prepared in advance. He said that he did not obtain a statement
from Ray Beach. Worsham acknowledged that he did not go to Ray Beach's residence until
September 18, 2000.
      Detective Worsham testified that allegations concerning sexual abuse of children require
special care, but that he felt he could interview K. B. because of her age, which was 14 at the time
of the event and 15 at the time of the interview. He stated that he felt he was qualified to do so
because he had taken many statements on many other criminal cases in his career. He
acknowledged that he had received no specialized training with regard to the investigation of
sexual abuse of children.
      Ray Beech, K. B.’s father, testified that he kept a calendar showing when K. B. stayed with
her mother. He stated that the only two days in 2000 that she stayed with her mother were
January 8 and April 29.
      In urging that the evidence is insufficient, Kellis mentions that Officer Worsham responded
a week after he received a call about the event, which was six months after the event occurred;
that Officer Worsham coached K. B. on the exact details and revised her statement with the
specific intent of making his case; and that he never interviewed Kellis or investigated further. 
He also points to inconsistencies or defects in K. B.'s testimony, including her ability to see
clearly in a darkened room; the discrepancy as to whether the event occurred in mid-March or
April; and the fact that she indicated that Kellis could have been asleep when the event occurred.
      Concerning these matters, we would point out that a reasonable jury could have determined
the following from the evidence: Officer Worsham’s delay in responding to Ray Beach’s call was
because he was the only investigator for the West Columbia Police Department; K. B. delayed in
reporting what occurred because she did not think her mother would believe her and she did not
want to disrupt her mother’s family; it was K. B., not Officer Worsham, who indicated that Kellis
touched her on her private part and Officer Worsham, in supplying the word “vagina” and
inserting it in the statement, was simply stating in other words what K. B. had indicated; Officer
Worsham made a reasonable effort to contact Kellis about the event; the bedroom where the
incident occurred was illuminated by light from another room; the event could have occurred as
related by K. B., even though she could not recall the specific date six months later; and Kellis
was not asleep, given the fact that he was masturbating during the event. Having considered these
matters raised by Kellis, we find that they do not indicate that the proof of guilt is so obviously
weak as to undermine confidence in the jury's determination, or that the proof of guilt is greatly
outweighed by contrary proof. We hold the evidence is legally and factually sufficient to support
the conviction, and overrule issue one.
      Kellis insists in issue two that the trial court erred by allowing the State on two occasions in
its argument on punishment to urge that the jury punish him for both the offense for which he was
on trial as well as a prior offense. Inasmuch as Kellis did not object to either argument, nothing
is presented for review. Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Kellis’s
statement in his brief that he objected to these arguments is unsupported by the record. We
overrule issue two.
      The judgment is affirmed.

                                                                   JOHN G. HILL
                                                                   Senior Justice

Before Chief Justice Davis,
      Justice Gray, and
      Senior Justice Hill (Sitting by Assignment)
Affirmed
Opinion delivered and filed December 18, 2002
Do not publish
[CR25]



.07, § 3(a). Darnell does not show us how counsel’s failure to
raise an objection based on inappropriate grounds falls outside the range of competent professional
assistance.


 Therefore, Darnell has not overcome the strong presumption that counsel’s conduct
lies within the wide range of reasonable representation. McFarland, 928 S.W.2d at 500. We do
not reach the second prong of the Strickland test: whether the result might have been different but
for counsel’s deficient performance. We overrule Darnell’s first point of error.
Failure to request notice of State’s intent to introduce evidence of extraneous acts
      In her second point of error, Darnell claims trial counsel’s failure to request a Rule 404(b)
notice from the State constituted professional error. Rule 404(b) of the Texas Rules of Evidence
provides that upon timely request from the accused in a criminal trial, the State must provide
reasonable notice of its intent to introduce, during its case-in-chief, evidence of extraneous
conduct. Tex. R. Evid. 404(b). Thus, Rule 404(b) explicitly governs notice of evidence to be
presented during the guilt/innocence phase of trial. Guidry v. State, 9 S.W.3d 133, 153 (Tex.
Crim. App. 1999).