NO. 07-06-0216-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 7, 2006

______________________________

THE STATE OF TEXAS, 

Appellant

v.

USTACIO CELAYA, 

Appellee

_________________________________

FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;

NO. CR-2005I-145; HON. ROLAND SAUL, PRESIDING

_______________________________

Opinion

_______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

The State of Texas appeals from an order granting the motion of Ustacio Celaya  to quash the indictment issued against him.  Through the motion, Celaya asserted that the indictment was defective because one of the prior convictions used to enhance the underlying charge of driving while intoxicated to the level of a felony was too remote.  The trial court agreed.  The State now argues that the decision of the trial court was incorrect.  Neither conviction was too remote according to the provisions of § 49.09(e) of the Texas Penal Code, it posits.
(footnote: 1)  We overrule the issue and affirm the trial court’s order.

The State indicted Celaya for driving while intoxicated on or about July 30, 2005.  Included in the indictment were two enhancement paragraphs.  They were to be used to make the offense a felony.  
See 
Tex. Pen. Code Ann.
 §49.09(b)(2) (Vernon Supp. 2006) (stating that an offense of driving while intoxicated is a felony of the third degree if it is shown that the person has previously been convicted two times of any other offense relating to the operation of a motor vehicle while intoxicated).  The first paragraph averred that Celaya had been convicted of driving while intoxicated on April 20, 1989.  The second mentioned a like conviction on April 29, 1982.  

Per §49.09(e) of the Penal Code, a conviction may not be used for enhancement purposes if: 

(1) the conviction was a final conviction . . . 

(2) the offense for which the person is being tried was committed more than 10 years after the latest of:

(A) the date on which the judgment was entered for the previous conviction;

(B) the date on which the person was discharged from any period of community supervision on which the person was placed for the previous conviction;

(C) the date on which the person successfully completed any period of parole on which the person was released after serving a portion of the term to which the person was sentenced for the previous conviction; or

(D) the date on which the person completed serving any sentence for which the person was confined or imprisoned for the previous conviction; and

(3) the person has not been convicted of an offense. . . related to operating a motor vehicle while intoxicated within 10 years of the latest date under Subdivision (2).

Tex. Pen. Code Ann.
 §49.09(e) (Vernon 2003).  All three conditions must be met for the conviction to be available for enhancement, according to the Court of Criminal Appeals.  
Getts v. State, 
155 S.W.3d 153, 156 (Tex. Crim. App. 2005).  That same court also took care to note that the phrase “
a conviction
 may not be used for purposes of enhancement under this section . . .” refers “to one conviction, not two.”  
Id.
 at 155-56 (emphasis added).  Thus, the statue “applies to prior convictions individually, not collectively.”  
Id.
  In other words, each conviction to be used for purposes of enhancement must be tested against the three conditions.  

Counsel for Celaya represented to the trial court that the 1989 conviction resulted in a probated sentence.  Furthermore, Celaya was discharged from probation on July 10, 1992, according to counsel.  The prosecutor did not dispute or object to these representations.  
See
 
Peterson v. State, 
961 S.W.2d 308, 311 (Tex. App.–Houston [1
st
 Dist.] 1997, pet. ref’d) (stating that non-evidence introduced and considered by a court without objection is considered evidence); 
Jones v. State
, 795 S.W.2d 32, 34 (Tex. App.–Houston [1
st
 Dist.] 1990, no pet.) (stating the same)
.  Given this information, we conclude that the 1989 conviction falls within the scope of §49.09(e) and cannot be used for the enhancements purposes involved at bar.  This is so because it 1) was final, 2) the current offense for which Celaya is being prosecuted purportedly occurred more than ten years after his discharge from probation for the 1989 conviction,
(footnote: 2) and 3) Celaya had not been convicted for driving while intoxicated within ten years of July 20, 1992 (
i.e. 
his 1982 conviction for same having occurred several months outside the ten-year window).  

In holding as we do, we reject the State’s contention that to the extent the 1982 conviction may be available for enhancement purposes, then the 1989 conviction automatically becomes available since it arose within ten years of 1982.  As stated in 
Getts
, each conviction the State intends to use must be separately tested against the conditions of §49.09(e).  
Getts v. State
, 155 S.W.3d at 155-56.  So, both the 1982 and 1989 convictions at bar must undergo separate testing against the conditions of §49.09(e).  And, that the unpublished decision in 
State v. Henderson
, No. 05-03-01832-CR, 2005 Tex. App. 
Lexis
 1467 (Tex. App.–Dallas, February 24, 2005, pet. denied) may suggest otherwise is of no moment.  There, the court suggested that the two prior convictions could be used simply if the dates of conviction were within ten years of each other.  Yet, that holding ran afoul of §49.09(e)(3).

Section 49.09(e)(3) provided for the comparison of two matters.  One was the conviction sought to be used for enhancement purposes.  The other was any other conviction of appellant for driving while intoxicated.  And, while the applicable date (
i.e.
 the date to be utilized in the comparison) for the latter was the date of conviction, such is not true for the former.  Rather, the statute specified that date to be the “latest date under Subdivision (2).”  
Tex. Pen. Code Ann
. §49.09(e)(3) (Vernon 2003).  And, we are bound by this quoted passage from the statute.  Morever, this particular passage was not taken into account by the 
Henderson
 court in arriving at its decision.
(footnote: 3)  Consequently, we do not find the opinion controlling. 

So too do we reject the State’s alternative argument that if a conviction precedes that which the State purports to use, then what date is the “latest” (for purposes of §49.09(e)(3)) is determined by calculating in the inverse.  We are obligated to afford words appearing in a statute their plain meaning.  
Getts v. State
, 155 S.W.3d at 155.  Furthermore, the plain meaning of the word “latest” connotes something “happening just previous to the present time [especially] as the most recent of a succession.”  
Merriam-Webster Collegiate Dictionary
 702 (11
th
 ed. 2003).  In other words, “latest” means the most recent or near to the present time.  So, by using that particular word in §49.09(e)(3), the legislature required us to calculate not retroactively but prospectively so as to determine the date most near the present.

In sum, because the date (July 20, 1992) on which Celaya was discharged from probation as a result of his 1989 conviction was not within ten years of his April 29, 1982 conviction, the 1989 conviction could not be used for enhancement purposes.  Thus, the trial court did not err in granting his motion to quash the indictment, and we affirm that order.

Brian Quinn 

          Chief Justice 

Publish.

 such as shoe print identification,

[A]nd the type of science typically at issue in 
Daubert 
[
(footnote: 4)] 
cases
.  Expert testimony based on empirical science does things like determining what substance something is (e.g., what is that white powder?) or measuring the quantity of something (e.g., how much alcohol is in the murder victim's blood?).  Forensic identification science has a different objective.  Forensic identification evidence serves to connect a crime scene object or mark to the one and only source of that object or mark.  
The reliability of these sciences rests upon the experience and observational powers of their practitioners.  
While a strict application of the 
Daubert
 factors to forensic identification sciences might be a fruitless exercise, due to the inherently experiential nature of this type of expertise, the [trial court] will be in the best position to make this determination. 

Ford, 
481 F.3d 215, 219 n.5 (citations and internal quotation marks omitted).
 

Given the cited pronouncements of our State’s highest criminal court, we find the trial court’s finding that shoe print comparison evidence is valid was not an abuse of discretion.

We now turn to the validity of the technique applying shoe print comparison and the propriety of its application by Mullins in the underlying case.  
See Kelly, 
824 S.W.2d at 573.  
A substantial record on appellant’s reliability challenge exists, in part because it includes the testimony of Mullins during the gatekeeper hearing and before the jury.
(footnote: 5)
 Mullins testified that impressions is a recognized area of forensic science subject to agency protocols.  As we have noted and reiterate for this discussion, the validity of shoe print comparison has long been accepted as a valid means of connecting a crime scene object or mark to the source of that object or mark
.

During the gatekeeper hearing, and with fuller elaboration before the jury, Mullins  testified of the process of shoe print comparison.  The analysis begins with a shoe print impression presented by a photograph or tangible item.  An impression is a pattern.  It could be in dust or three dimensional, such as in the soil.  The analyst documents the features of the impression.  A determination of shoe design and size is made.  The analyst considers the presence or not of “accidentals.”  Accidental characteristics are blemishes on the shoe, such as cuts, scratches or a rock imbedded in the tread pattern.  A test impression is made of the bottom of the shoe by inking it with latent print ink and applying the shoe sole to white paper.  An overlay, or transparency, is made of the impression.  The overlay is for comparison with the test impression of the shoe.  It permits determination that the elements of the shoe, such as the shoe pattern and size, align.  Within these parameters the analyst looks for accidentals.  A comparison is made between the impression and the shoe test impression.  If matching accidentals appear on the impression and the shoe test impression, the analyst can draw a conclusion that no shoe, other than the one under analysis, made the impression.  On the other hand, the absence of accidentals precludes ruling out another shoe of the same design and style as the source of the impression.  Accidentals are thus the key to comparison and elimination of other shoes.

Here Mullins testified he applied this technique in reaching his opinions.  Noting accidentals common to appellant’s shoes and the impressions, Mullins opined that no shoe but appellant’s could have made the impression on three of the decals and the paper from the getaway vehicle.  Conversely, the other decal sampled did not contain an accidental and therefore could have been produced by any shoe of like size and brand as appellant’s.

As noted, shoe print comparison is not a complex field.  
Rodgers, 
205 S.W.3d at 533.
(footnote: 6) 
 The jury heard Mullins’ comparison testimony and had before it photographs of appellant’s shoes and the decals used for comparison.  
It was free to assign what weight and credibility it chose to his opinions.  

We conclude that the trial court did not abuse its discretion in impliedly finding the technique of shoe print comparison valid and properly applied by Mullins to reach his opinions in the underlying case.  We overrule appellant’s first issue.

Denial of Appellant’s Motion for Directed Verdict

Appellant complains by his second issue that the trial court erred in denying his motion for directed verdict.  The essence of the complaint is the State’s evidence of identification was legally insufficient.  

The trial court’s denial of a motion for directed verdict is reviewed as a challenge to the legal sufficiency of the evidence.  
Williams v. State, 
937 S.W.2d 479, 482 (Tex.Crim.App. 1996).  We therefore view the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, a rational jury could have found each element of the offense beyond a reasonable doubt.  
Swearingen v. State, 
101 S.W.3d 89, 95 (Tex.Crim.App. 2003); 
Conner v. State, 
67 S.W.3d 192, 197 (Tex.Crim.App. 2001), 
citing Jackson v. Virginia, 
443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  If, given all of the evidence, a rational jury would necessarily entertain a reasonable doubt of the defendant’s guilt, due process requires that we reverse and order a judgment of acquittal.  
Swearingen, 
101 S.W.3d at 95 (
citing Narvaiz v. State, 
840 S.W.2d 415, 423 (Tex.Crim.App. 1992))
.  The identity of a perpetrator may be established through direct or circumstantial evidence.  
Earls v. State, 
707 S.W.2d 82, 85 (Tex.Crim.App. 1986).  Proof of identity by circumstantial evidence is not subject to a more rigorous review than proof by direct evidence, since both are equally probative.  
See McGee v. State, 
774 S.W.2d 229, 238 (Tex.Crim.App. 1989).  

Following a chase of the getaway vehicle, and the flight of its occupants on foot, appellant was found in an open garage winded and sweating profusely.  It was an early hour of the day not known for pedestrian traffic in the area.  Appellant wore dark shoes as did the individuals depicted in the store surveillance video.  The video clearly depicts the perpetrators’ struggle to load the ATM in the bed of the getaway vehicle.  In the course of this effort, at least two of the thieves repeatedly stepped on the white decals strewn on the sidewalk in front of the store.  When contacted in the garage by police, appellant told of fleeing would-be attackers.  Yet appellant displayed no relief at the protective presence of police.  
And police were unable to corroborate appellant’s story.  
Mullins testified that two decals found in front of the store and a sheet of paper from the floorboard of the getaway vehicle contained appellant’s right shoe print.  Another decal contained his left shoe print.  From the detailed video, the jury was able to follow the decals from the store to the sidewalk and observe foot contact with the perpetrators.  It had in evidence the decals and photographs of appellant’s shoes and heard Mullins’ comparison opinions matching appellant’s shoes to some of the decals and the sheet of paper.  When the evidence and reasonable inferences therefrom are viewed in the light most favorable to the verdict we find a rational juror could have found beyond a reasonable doubt that appellant committed the offense for which he was indicted.  Finding the evidence legally sufficient, we conclude the trial court did not err in denying appellant’s motion for directed verdict.

We overrule appellant’s second issue and having overruled his two issues, affirm the judgment of the trial court.

James T. Campbell

Justice

Publish.

FOOTNOTES
1:
Section 49.09(e) of the Penal Code was repealed effective September 1, 2005.  Act of May 25, 2005, 79
th
 Leg. R.S., ch. 996, §3, 1993 
Tex. Gen. Laws
 3364.  However, it is applicable here given that the offense for which Celaya is being prosecuted purportedly occurred before September 1, 2005.  
See id. 
§4
 (providing that the change does not apply to offenses occurring before the effective date of the act).   

2:
Section 49.09(e)(2) requires that the “latest” of the dates contemplated by subsections (A), (B), (C), and (D) be used to assess whether the conviction is too remote.  
Tex. Pen. Code Ann.
 §49.09(e)(2) (Vernon 2003).  Since appellant received probation or community supervision, served no parole, and served no sentence in prison, subsections (C) and (D) do not apply.  Nor does the date described in subsection (A) apply since Celaya’s date of discharge from probation (
i.e.
 July 1992) is later than his date of conviction (April 1989). 

3:
The chart appearing in the appendix of 
Getts
 may also be read as incorporating this omission.  For instance, it alludes to the “prior convictions [being] within 10 years of one another.”  
Getts v. State
, 155 S.W.3d 153, 167 (Tex. Crim. App. 2005).  Some may read that passage as saying the pertinent dates to compare are the dates of conviction as opposed to the date of conviction and the discharge date.  Such a reading, however, would ignore the express language of §49.09(e)(3). 

4:
Section 49.09(e)(2) requires that the “latest” of the dates contemplated by subsections (A), (B), (C), and (D) be used to assess whether the conviction is too remote.  
Tex. Pen. Code Ann.
 §49.09(e)(2) (Vernon 2003).  Since appellant received probation or community supervision, served no parole, and served no sentence in prison, subsections (C) and (D) do not apply.  Nor does the date described in subsection (A) apply since Celaya’s date of discharge from probation (
i.e.
 July 1992) is later than his date of conviction (April 1989). 

5:
6: