NO. 07-06-0420-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 14, 2008
______________________________


DAVID DESCHENES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NO. 6804; HONORABLE LEE WATERS, JUDGE

_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.


OPINION


          Appellant, David Deschenes, was convicted by a jury of money laundering in
violation of § 34.02(a)(1) of the Texas Penal Code and sentenced to ten years
confinement, suspended for ten years, and a $10,000 fine. Appellant contends: (1) the
evidence at trial was legally insufficient to support his conviction; (2) the evidence at trial
was factually insufficient to support his conviction; and (3) the trial court erred in denying
his motion to suppress evidence. We reverse his conviction and render judgment of
acquittal.
Background
I. Appellant’s Arrest
          On January 22, 2002, DPS Trooper Oscar Esqueda stopped Appellant for speeding 
on Interstate 40 in Gray County. Esqueda approached Appellant’s car on the passenger
side to avoid passing traffic, and Appellant opened the passenger car door to speak with
him. Esqueda observed empty beverage containers and fast food wrappers strewn on the
car’s floorboard. After Appellant produced his driver’s license, Esqueda informed him that
he was speeding, asked him to get out of the vehicle, and sit in his patrol car.
           In the patrol car, Esqueda continued to ask Appellant questions. Appellant told him
that his car had been rented by his father and that he was traveling from Connecticut to
San Diego to visit an uncle living on a naval base. Esqueda named several naval bases
in the San Diego area and Appellant was unsure of the specific base where his uncle lived. 
Esqueda became suspicious because Appellant appeared defensive, nervous, and unsure
of the exact location of his ultimate destination. He was also suspicious because Appellant
was traveling east on I-40, a route used by drug smugglers to move drugs from the west
coast to the east coast and cash from the east coast to the west coast. In his experience,
smugglers typically did not know exactly where they were going and it appeared Appellant
was driving straight through because the car’s interior had a “lived-in” look. 
          Esqueda then asked Appellant whether he had any weapons in his car, grenades,
or narcotics such as marihuana or cocaine. Appellant looked at his car and answered in
the negative. Esqueda’s suspicions were further heightened when Appellant looked at his
car when he answered rather than maintaining eye contact. Esqueda also asked whether
Appellant was carrying any large sums of money. Appellant indicated he was not and
responded he had eighty dollars and several credit cards on his person and intended to
fund his trip using a debit card. Esqueda observed Appellant’s nervous behavior appeared
to increase as the traffic stop progressed. He further testified that the typical motoring
public became less nervous as a stop progressed and things were explained to them. In
his opinion, a person involved in some type of criminal activity remains nervous, or
becomes more so, the longer there is contact. 
          Esqueda issued a warning to Appellant. While Appellant was signing the warning,
Esqueda asked Appellant if he could search his car and Appellant consented. During the
search, Esqueda again observed that Appellant’s nervousness escalated. Esqueda found
nothing in the passenger side of the vehicle or passenger compartment and found no
evidence of drugs or contraband in the car. Esqueda then took the keys from the ignition
and went back to search the trunk. 
          In the trunk, Esqueda observed three pieces of luggage–a large, tan suitcase, a
medium, black suitcase, and a small carry bag. Esqueda asked Appellant to show him the
bags’ contents. Appellant showed Esqueda some clothing in the medium bag. Esqueda
then asked Appellant to show him what was in the small carry bag. He believed Appellant
was apprehensive about opening the remaining bags. Appellant opened the carry bag and
showed Esqueda some hygiene articles and underwear; however, from Esqueda’s
perspective, he believed Appellant appeared to be ignoring a blue plastic sack inside the
bag. 
          Esqueda pressed down on the carry bag and felt something hard inside. Appellant
then looked up at Esqueda and said, “Okay, I lied.” Esqueda looked in the sack and found
five bundles of cash held together by rubber bands. When he inquired how much money
was in the bag, Appellant responded $17,500.


 Esqueda testified that, in his experience,
people smuggling or transporting illegal proceeds often bundled the money with rubber
bands and placed it in plastic bags. 
          Esqueda then searched the medium bag and found a set of scales. Appellant
indicated he used the scales to “weigh stuff.” The large, tan bag was empty. Appellant
stated he owned the money and had brought it with him because he was thinking of going
to Las Vegas. He told Esqueda that he had worked for the money. 
          Esqueda suspected Appellant was transporting scales to measure drugs and
intended to use the empty suitcase to store drugs. Based upon his observations, Esqueda
believed the cash represented proceeds from illegal transactions. He accompanied
Appellant to his patrol car and called for a canine officer. When Esqueda asked Appellant
why he lied about the money being in his vehicle, Appellant responded he was nervous
telling anyone he had a large amount of cash in his car because, when he was young, he
had problems with the police taking his money. 
          When DPS Trooper Tony Rocha arrived with DPS Canine Storm, Esqueda asked
him to run Appellant’s car. Storm was trained to detect an odor of marihuana,
methamphetamine, cocaine, and heroin. Storm did not alert to the interior or exterior of
Appellant’s car. Rocha put Storm in the trunk and he alerted to the small carry bag
containing the currency and the large empty suitcase. Esqueda then arrested Appellant
for money laundering, seized the $17,620, and deposited the money in a bank. 
II. Indictment
          Two and a half years later, in July 2004, Appellant was indicted by a Gray County
Grand Jury for money laundering. The indictment provided as follows:
[U]pon their oaths present in and to said Court at said term that DAVID
JAMES DESCHENES hereinafter styled Defendant, on or about the 11th day
of January, 2002, and before the presentment of this indictment, in the
County and State aforesaid, did then and there knowingly possess, conceal,
and transport the proceeds of criminal activity, to-wit: United States
currency, and the value of the said funds was $3,000.00 or more but less
than $20,000.00, against the peace and dignity of the State.
 
          The Texas Penal Code defines “criminal activity” as any offense, including any
preparatory offense, that is classified as a felony under the laws of this State or the United
States, or that is punishable by confinement for more than one year under the laws of
another state. Tex. Penal Code Ann. § 34.01(1) (Vernon 2003). “Proceeds” are defined
as “funds acquired or derived directly or indirectly from, produced through, or realized
through an act.” § 34.01(4). 
          The Grand Jury failed to specify in the indictment and the State failed to identify at
trial the offense that constituted the statutory element of criminal activity relied upon by the
State to meet its burden of proof. Per the statutory definition, it is clear that the term
“criminal activity” could comprise any one of hundreds of felony offenses, state or federal. 
          While the State maintains that it is under no obligation to specify in the indictment
the criminal activity from which the “proceeds” originated, it fails to cite any authority for this
proposition. While we agree that the indictment invoked the jurisdiction of the trial court, 
Teal v. State, 230 S.W.3d 172, 180 (Tex.Crim.App. 2007); Duron v. State, 956 S.W.2d
547, 550-51 (Tex.Crim.App. 1997), we find the indictment was defective. 
          Generally, an indictment which tracks the statutory language defining an offense will
provide adequate notice to the accused of the nature of the charges against him. Curry
v. State, 30 S.W.3d 394, 398 (Tex.Crim.App. 2000); Mays v. State, 967 S.W.2d 404, 406
(Tex.Crim.App. 1998). An indictment need not set forth facts which are “merely
evidentiary in nature.” Mays, 967 S.W.2d at 406. However, in the face of a motion to
quash, an indictment must provide more specific allegations “if the prohibited conduct is
statutorily defined to include more than one manner or means of commission.” Saathoff
v. State, 891 S.W.2d 264, 266 (Tex.Crim.App. 1994). The statutory definition of “criminal
activity” includes a myriad of manner or means of commission. Therefore, an indictment
alleging the offense of money laundering should specify the offense which the State
contends to be the relevant “criminal activity” and failure to do so renders the indictment
defective. 
          That said, if a defendant does not object to a defect, error, or irregularity of form or
substance in an indictment before the date on which the trial on the merits commences,
he waives and forfeits the right to object to the defect, error, or irregularity and he may not
raise the objection on appeal. Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005). In
this case, Appellant never sought to require the State to specify the exact “criminal activity”
it was relying upon to prove the allegations in the indictment. Therefore, Appellant’s
complaints on appeal will be analyzed based upon the indictment as drafted.
III. Trial
          On September 18 and 19, 2006, Appellant was tried by a jury. At trial, the State
neither proffered nor argued any specific theory pertaining to the element of criminal
activity. Rather, in its opening and closing statements, the State argued only that Appellant
was involved in “criminal activity.” Although the State’s principal witness, Esqueda, made
several indirect references to “drug trafficking” and “drug smuggling” while describing
generally the activities of persons involved in such illegal ventures, he expressed no
opinion connecting Appellant and the money to any identified felony. In fact, Esqueda
testified he had no personal knowledge where Appellant’s money originated. 
          In presenting to the jury the applicable law and relevant definitions, the trial court
charged the jury as follows:
The Defendant, DAVID JAMES DESCHENES, stands charged by indictment
with the offense of MONEY LAUNDERING, . . . . A person commits the
offense if the person knowingly possesses, conceals and transports the
proceeds of criminal activity and the value of the funds is $3,000 or more but
less than $20,000. Unless you so find by a reasonable doubt, or if you have
a reasonable doubt thereof, you will acquit the Defendant and say by your
verdict “Not Guilty.”

 

 “Criminal activity” means any offense, including any preparatory offense, that
is classified as a felony under the laws of this State or the United States or
punishable by confinement for more than one year under the laws of another
state. 

 
 “Funds” include coin or paper money of the United States. 

 
“Proceeds” means funds acquired or derived directly or indirectly from,
produced through, or realized through an act.





          Neither the indictment, jury instructions, nor the State’s arguments ever identified
the “offense” or “felony” that constituted the “criminal activity” from which the $17,620 was
“acquired or derived directly or indirectly from, produced through, or realized.”

 
Discussion

I. Appellant’s Contentions

          Appellant contends the State’s evidence at trial was legally insufficient to prove
money laundering because the State failed to prove that the money found in Appellant’s
car was proceeds from any criminal activity. Appellant also asserts the State failed to
identify and prove the criminal activity from which the money was acquired or derived.
Alternatively, Appellant asserts the evidence is factually insufficient to support his
conviction.


 Finally, Appellant contends the trial court erred in its denial of his motion to
suppress all evidence obtained after the warrant check was run on him and Esqueda
issued a traffic warning because Esqueda had no reasonable suspicion to continue his
detention after the traffic warning was issued. 
II. Legal Sufficiency - Standard of Review
          In assessing the legal sufficiency of the evidence, we must consider all the record
evidence in the light most favorable to the prosecution and determine whether, based on
that evidence and reasonable inferences therefrom, any rational trier of fact could have
found the defendant guilty of all the elements of the offense beyond a reasonable doubt. 
See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979);
Hooper v. State, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). In carrying out this task, we
remain cognizant that “proof beyond a reasonable doubt” means proof to a high degree of
certainty; Lane v. State, 151 S.W.3d 188, 191 (Tex.Crim.App. 2004), and if, based on all
the evidence, a reasonably-minded jury must necessarily entertain a reasonable doubt of
the defendant’s guilt, due process requires that we reverse the conviction and order a
judgment of acquittal. Swearingen v. State, 101 S.W.3d 89, 95 (Tex.Crim.App. 2003),
citing Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), cert. denied, 507 U.S.
975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). In effect, a claim of legal insufficiency is an
argument that the case never should have been presented to the jury. Wesbrook v. State,
29 S.W.3d 103, 111 (Tex.Crim.App. 2000), cert. denied, 532 U.S. 944, 121 S.Ct. 1407,
149 L.E.2d 349 (2001). 
          In conducting a legal sufficiency review, we do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier
of fact. See Dewberry v. State, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), cert. denied, 529 
U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). Instead, we determine whether the
explicit and implicit findings of the trier of fact are rational by viewing all the evidence
admitted at trial in the light most favorable to the adjudication. Adelman v. State, 828
S.W.2d 418, 422 (Tex.Crim.App. 1992). In our examination, circumstantial evidence is as
probative as direct evidence in establishing the guilt of an actor and the standard of review
of appeal is the same for both direct and circumstantial evidence cases. Guevara v. State,
152 S.W.3d 45, 49 (Tex.Crim.App. 2004). Any inconsistencies in the evidence are also
resolved in favor of the adjudication. Curry v. State, 30 S.W.3d 394, 406 (Tex.Crim.App.
2000). 
          We measure the sufficiency of the evidence against the elements of the offense as
defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240
(Tex.Crim.App. 1997). Such a charge would be one which “accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State’s burden of proof
or unnecessarily restrict the State’s theories of liability, and adequately describes the
particular offense for which the defendant was tried.” Id.
III. Hypothetically Correct Jury Charge
          In fashioning our hypothetically correct jury charge, we are bound by the law “as
authorized by the indictment.” That is to say, Appellant’s hypothetically correct jury charge
would simply quote the language of the indictment, instructing the jury to find Appellant
guilty if it found that the money was proceeds of “criminal activity.” See Curry, 30 S.W.3d
at 404. Just as we cannot substitute ourselves for the Grand Jury and re-write the
indictment, we cannot search the statutes, state and federal, to find a felony to fit the
State’s evidence or the jury’s verdict. Here, where the indictment and the jury instructions
merely parrot the statute and Appellant did not seek to compel the State to specify the 
specific criminal activity, we are bound by the language contained in the indictment in
conducting our sufficiency analysis. Fisher v. State, 887 S.W.2d 49, 57 (Tex.Crim.App.
1994). Therefore, the essential elements of the offense of money laundering, pursuant to
§ 34.02(a)(1) of the Texas Penal Code, under our hypothetically correct jury charge as
authorized by the indictment in this case, are met when a person: (1) knowingly; (2)
acquires or maintains an interest in, receives, conceals, possesses, transfers, or
transports; (3) the proceeds; (4) of criminal activity. Tex. Penal Code Ann. § 34.02 (Vernon
Supp. 2007)
IV. Proceeds of Criminal Activity
          Appellant contends the State failed to offer any evidence that the $17,620
represented “proceeds” of any “criminal activity.” As stated above, for purposes of a
money laundering prosecution, proceeds are statutorily defined as funds acquired or
derived directly or indirectly from, produced through, or realized through some criminal
activity. § 34.01(4). 
          On appeal, for the first time, the State argues evidence was presented to the jury
from which they were entitled to conclude that Appellant’s money came from “sales and
trafficking in narcotics.” Although the State did not argue this theory at trial, it contends 
the collective impact of the entire body of evidence legally supports this conclusion.
           While not directly addressing the question of whether the money was derived from
criminal activity, the State contends that civil asset-forfeiture cases under Chapter 59 of
the Texas Code of Criminal Procedure are persuasive.


 See Tex. Code Crim. Proc. Ann.
arts. 59.01, 59.02 (Vernon 2006). While asset-forfeiture cases can be argued to support
a legal sufficiency finding that money seized was “used or intended to be used” in the
commission of a felony under the civil preponderance of the evidence standard,


 they are
of limited precedential value when analyzing a legal sufficiency finding that money was
proceeds derived from criminal activity under the beyond a reasonable doubt standard. 
If anything, cases finding a lack of legal sufficiency under the reduced civil standard are
persuasive of finding a lack of legal sufficiency under the higher criminal standard.



          The State contends that its best single piece of evidence that Appellant’s money
was proceeds of some criminal activity was Esqueda’s “expert” testimony that “[a] lot of the
proceeds from the drugs that are shipped to the east come back westbound to either the
originator who sent the drugs or someone that’s going to purchase narcotics or weapons
or whatever the contraband may be.” For this speculative statement to have any probative
value there must be some connection between the money and the trafficking of drugs. 
Proof that amounts to only a strong suspicion or mere probability of guilt is insufficient to
sustain a conviction. Allen v. State, ___ S.W.3d ___, No. 03-04-00557-CR, 2008 WL
615431, at *18 (Tex.App.–Austin March 7, 2008, no pet h.). If circumstantial evidence
provides no more than a suspicion, the jury is not permitted to reach a speculative
conclusion. Id. A jury may not reasonably infer an ultimate fact from meager
circumstantial evidence, none more probable than another. Id. In order for a conviction
for money laundering under § 34.02(a)(1) to be upheld, there must be direct or
circumstantial evidence of a temporal connection, or nexus, between the money and some
criminal activity.



          Here, the evidence tending to establish a connection between the money and some
unnamed criminal activity amounts to mere conjecture. In support of a nexus between
Appellant’s $17,620 and some unidentified “criminal activity,” the State points to profiling
characteristics and a positive alert by a narcotics dog: (1) Appellant opened the passenger
door to speak to the officer, handed him his wallet when asked for his license, and exited
on the passenger side at the officer’s request;


 (2) car had energy drinks and fast food
wrappers on the floorboard giving it a “lived-in” look; (3) he could not give his uncle’s exact
address in San Diego;


 (4) he was traveling east to west on Interstate 40;


 (5) he was
nervous throughout the encounter;


 (6) he stared at his vehicle rather than maintaining eye
contact when answering one of Esqueda’s questions; (7) he denied carrying a large sum
of cash;


 (8) he was in possession of scales;


 (9) he avoided showing Esqueda the
money;


 (10) the money was in a plastic bag;


 (11) it was a large amount of money;


 (12)
the money was divided into bundles and wrapped with rubber bands;


 (13) he had an
empty suitcase; (14) he denied having any drugs in his vehicle;


 (15) he stated he was
going to Las Vegas;


 (16) he failed to produce “documentation” for the money; (17) a
narcotics dog alerted to the money and the large empty suitcase;


 (18) an odor of
narcotics on the empty suitcase;


 (19) the close proximity of the cash to the empty
suitcase that presumably contained narcotics at one time;


 (20) an odor of narcotics on
the cash;


 (21) the money was enough to purchase a felony amount of narcotics;


 (22)
money from drug trafficking travels east to west. 
          Profiling characteristics are normally factors courts consider when determining
whether Fourth Amendment rights are implicated by a brief investigatory detention.


 The
mere fact that a person’s actions match a drug courier profile and that person is carrying
a large amount of money that might be involved in some illegal activity is insufficient to
establish probable cause to justify forfeiture; United States v. $49,576.00 in U.S. Currency,
116 F.3d 425, 427-29 (9th Cir. 1997); United States v. $80,760.00, 781 F.Supp. 462, 475-76 (N.D.Tex. 1991)(“In this circuit, it is well settled that a statement of profile characteristics
will not, in and of itself, create a reasonable suspicion.”), and it is insufficient to establish
a nexus between the money and some criminal activity beyond a reasonable doubt. 
          The State did not present any credible evidence from which it could be inferred
Appellant was involved in any drug transaction, sale, or delivery at or around the time he
was arrested for money laundering. The State produced no evidence of drugs being
found. Nor did the State present any evidence of previous involvement in drugs or drug-related activities by Appellant. Appellant has no prior convictions or police contact related
to drugs, has no known relationship with drug trafficking, and made no admissions related
to the source of the money other than to say he earned it. Furthermore, the money was
not packaged in any way to indicate a conscious desire to prevent its detection by drug
dogs. Here we have no admissions, no drugs, no prior connection to drugs, and no
obvious attempt to surreptitiously secrete the money or prevent its discovery. Simply put,
we have no credible evidence of a temporal connection, or nexus, between the money and
some criminal activity. Accordingly, we find the jury’s verdict is not supported by legally
sufficient evidence. Issue one is sustained.
          Our disposition of issue one pretermits consideration of Appellant’s second and third
issues. Therefore, we reverse the trial court’s judgment of conviction and render judgment
of acquittal.


                                                                           Patrick A. Pirtle 

                                                                                 Justice 





Campbell, J., concurring in result.





Publish.