NO. 07-08-00205-CR; 07-08-00206-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MARCH 22, 2010

LYNN TAYLOR, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 55,385-D, 55,386-D; HONORABLE DAVID GLEASON, JUDGE

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant Lynn Taylor appeals his convictions for possession of cocaine[1] and unlawful possession of a firearm.[2] Through two issues he challenges the legal and factual sufficiency of evidence supporting the convictions and by a third issue he contends the trial court denied his constitutional right to present a defense. We will affirm.

---

[1] Tex. Health & Safety Code Ann. § 481.115(a),(d) (Vernon 2003).

[2] Tex. Penal Code Ann. § 46.04(a)(1) (Vernon Supp. 2009).

## Background

On March 5, 2007, members of the Amarillo police department SWAT team executed a "no knock" search warrant for crack cocaine at a city residence. According to the warrant's supporting affidavit, a confidential informant told police that within forty-eight hours of March 5 appellant possessed crack cocaine at the residence and represented to the informant that the substance was crack cocaine. When officers entered the residence, they found appellant's adult daughter Amber Richardson on a living room couch. In the upstairs bedroom, they located appellant in bed with Christa Morales.

Downstairs, off the living room, was what officers termed a bar area. There, in shelving above the bar officers found two baggies containing, respectively, 19.5 grams and 5.5 grams of a substance later identified as cocaine, and a loaded .25 caliber handgun. The shelves contained three letters addressed to appellant at the residence. From these envelopes, police obtained three finger prints matching appellant and one unidentified print. Another letter was addressed to Morales at the residence. A digital scale was found in a bank bag in a drawer below the bar. A finger print lifted from the scale matched appellant. A cabinet yielded a gun holster, a box of .45 caliber ammunition, and a box of .25 caliber ammunition. Among canned food items in a kitchen cabinet, officers found 138 one-dollar bills. In kitchen trash, officers found baggies with the corners removed. In the upstairs bedroom occupied by appellant and

Morales, officers found $1,500 cash in the pocket of appellant's pants.[3] Appellant's wallet contained his driver's license, which listed the residence as his address. Also in the bedroom was a glass crack pipe that officers attributed to Morales. It contained residue.

Appellant was indicted for possession, with intent to deliver, of cocaine in an amount four grams or more but less than two hundred grams and unlawful possession of a firearm.[4] The guilt-innocence phase of trial was by jury. Evidence revealed appellant was on parole for a felony conviction at the time of the alleged unlawful possession of a firearm. A Texas Department of Public Safety chemist testified to his opinion, based on testing, that the substance in the two baggies was cocaine. A police officer explained that small amounts of crack cocaine are sold in baggies with the corners removed to better conceal the drug. Another officer explained that it is not unusual to find large amounts of cash associated with illegal drug sales. In his opinion, the sale of illegal drugs is a "cash and carry business." According to the officer, narcotics are typically sold in amounts purchased with ten and twenty dollar bills. There was also testimony from an officer that dealers of crack cocaine use digital scales to weigh narcotics. And plastic bags configured in this manner as those found in the kitchen trash are used in the sale of small amounts of narcotics. According to other

---

[3] Photos show appellant's pants lying folded on the floor next to the bed. The cash consisted of seven $100 bills, one $50 bill, thirty-three $20 bills, seven $10 bills, one $5 bill, and fifteen $1 bills.

[4] Appellant refused court-appointed legal representation and appeared *pro se* in the trial court proceedings. No appellate issue is raised with regard to his self-representation at trial.

testimony, Richardson had children and children's clothing and toys were located in the residence, she was a "resident" of the residence, and mail bearing her name had been delivered to the residence. There was testimony that the residence was owned jointly by appellant and his siblings.

The jury convicted appellant of the lesser-included narcotics offense of possession of cocaine in the amount alleged by the indictment and the firearm violation. The sentencing range was enhanced by appellant's prior felony convictions and a deadly weapon finding. The court sentenced appellant to prison terms of twenty-five years on the narcotics violation and twelve years on the firearm violation. This appeal followed.

## Discussion

In his first and second issues, appellant contends the evidence was legally or factually insufficient to sustain his conviction for possession of a controlled substance and unlawful possession of a firearm because of insufficient links connecting him with the items of contraband.

When conducting a legal sufficiency review, we view the evidence in the light most favorable to the verdict to determine whether a rational fact-finder could have found each element of the offense beyond a reasonable doubt. *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App. 2003); *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App. 2001) (*citing Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v.*

*State,* 270 S.W.3d 564, 568 (Tex.Crim.App. 2008), *cert. denied,* 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009). Accordingly, when performing a legal sufficiency review, we are not free to re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). Rather, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State,* 214 S.W.3d 9, 16-17 (Tex.Crim.App. 2007). If, based on all the evidence, a reasonably-minded jury must necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal. *Swearingen,* 101 S.W.3d at 95 (*citing Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992)).

A factual sufficiency review of the evidence is "barely distinguishable" from the legal sufficiency review under *Jackson v. Virginia*. *Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim.App. 2006). A factual sufficiency review considers whether the evidence supporting guilt, though legally sufficient, is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. *Id.*; *Watson v. State,* 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006); *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App. 2000).

The gravamen of appellant's challenge is the sufficiency of evidence proving his possession of the crack cocaine and a firearm. "Possession means actual care, custody, control, or management." Tex. Penal Code Ann. § 1.07(a)(39) (Vernon Supp.

5

2009). A person commits a possessory offense only if he voluntarily possesses the prohibited item. *See id.* § 6.01(a) (Vernon 2003). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." *Id.* § 6.01(b).

To prove unlawful possession of a controlled substance, the State must prove the accused exercised actual care, custody, control, or management over the contraband and he knew the matter possessed was contraband. Tex. Health & Safety Code Ann. § 481.002(38) (Vernon Supp. 2009) and § 481.115(a) (Vernon 2003). *Evans v. State,* 202 S.W.3d 158, 162 (Tex.Crim.App. 2006); *Poindexter v. State,* 153 S.W.3d 402, 405 (Tex.Crim.App. 2005). To establish unlawful possession of a firearm by a felon, the State must prove the accused was previously convicted of a felony offense and possessed a firearm after the conviction and before the fifth anniversary of his release from confinement or from supervision, whichever date is later. Tex. Penal Code Ann. § 46.04(a)(1) (Vernon Supp. 2009). We analyze the sufficiency of the evidence proving unlawful possession of a firearm according to the same standards applied in cases of unlawful possession of a controlled substance. *Bates v. State,* 155 S.W.3d 212, 216 (Tex.App.–Dallas 2004, no pet.).

It is not necessary for the State to prove the accused maintained exclusive possession of the contraband; rather, joint possession is sufficient to sustain a conviction. *Cude v. State,* 716 S.W.2d 46, 47 (Tex.Crim.App. 1986). If the accused did not maintain exclusive control of the location of the contraband, however, the State must offer additional, independent facts linking the accused to the contraband.

6

*Poindexter,* 153 S.W.3d at 406; *Evans,* 202 S.W.3d at 162. Thus, the defendant's presence or proximity to contraband, if combined with other evidence, may be sufficient to establish his actual care, custody or control. *Id.* While not a litmus test, some of the factors linking an accused to contraband that courts have found may circumstantially show possession of contraband include: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the contraband was found; (12) whether the place where the contraband was found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id.* at 162 n.12. Our analysis focuses not on the number of links shown but from the "logical force" of all the evidence, direct and circumstantial. *Id.* at 161-62.

Evidence showed the residence was owned jointly by appellant and his siblings. But appellant had lived there some six months at the time officers executed the search warrant. His pants pocket contained a large amount of cash in denominations common to drug transactions. Appellant was directly tied to possession of cocaine by the evidence that, according to a confidential informant, appellant possessed crack cocaine

7

at the residence and told the informant the substance was crack cocaine.[5]  The jury could also have linked appellant to the cocaine and firearm through evidence of mail addressed to him at the residence and bearing his fingerprint, found in a shelf above the bar where the firearm and drugs were found, and the digital scale, also bearing appellant's fingerprint.

When viewed in the light most favorable to the prosecution we find a rational trier of fact could have found the essential elements of possession of a controlled substance and unlawful possession of a firearm beyond a reasonable doubt.

Throughout trial appellant emphasized the presence of his adult daughter Richardson.  As noted, she had children and the residence contained children's toys and clothing.  Relatives of appellant testified that Richardson resided and received mail at that address.  Despite the efforts of a court-approved investigator for appellant, Richardson could not be located by the time of trial.  As also noted, there was evidence that a crack pipe, found in the bedroom occupied by appellant and Morales, belonged to Morales.

While this evidence may point to occupancy of the residence by others, it does not dilute the force of evidence linking appellant to the contraband.  Viewing all the evidence in a neutral light we find the evidence supporting conviction is not so weak that the determination of the fact-finder is clearly wrong or unjust.  The evidence was

---

[5]  This hearsay statement was admitted without objection.  *See Poindexter,* 153 S.W.3d at 406 ("once the trier of fact has weighed the probative value of unobjected-to hearsay evidence in its factfinding process, an appellate court cannot deny that evidence probative value or ignore it in its review of the sufficiency of the evidence").

factually sufficient to support conviction. We overrule appellant's first and second issues.

By his third issue, appellant contends the trial court erred by excluding his proffered evidence attempting to tie Richardson more closely to the contraband. He contends the court's evidentiary ruling denied him his constitutional right to present to the jury a defense asserting Richardson's guilt.

For purposes of our disposition of his third issue, although appellant did not articulate his constitutional theory to the trial court with any specificity, we will assume the trial court was sufficiently aware of his contention to preserve it for our review.[6]

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Cameron v. State,* 241 S.W.3d 15, 19 (Tex.Crim.App. 2007). A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *McDonald v. State,* 179 S.W.3d 571, 576 (Tex.Crim.App. 2005).

Outside the presence of the jury, the trial court heard testimony from two Amarillo police officers, neither of whom was involved in the March 2007 possession arrest for which appellant was being tried. Their testimony concerned events that occurred in January 2007. One officer testified he investigated a police report of an aggravated

---

[6] Proper preservation of error requires a party make a timely and specific objection as soon as the basis for the objection becomes apparent, and the complaint on appeal must not vary from the trial court objection. *See* Tex. R. Evid. 103(a)(1); Tex. R. App. P. 33.1(a)(1)(A); *Heidelberg v. State,* 144 S.W.3d 535, 536 (Tex.Crim.App. 2004). Even claims of constitutional error may be waived if not properly brought to the attention of the trial court. *See Wright v. State,* 28 S.W.3d 526, 536 (Tex.Crim.App. 2000) (waiver of objection under Confrontation Clause).

assault that allegedly occurred in the parking lot of a convenience store on Amarillo Boulevard. The report, dated January 2, 2007, told of a fight involving several people. According to the report, the officer who authored it "was told" that someone named "Amber Richards" or "Amber Richardson" had a .25 caliber handgun, may have fired it, and put it in a trash dumpster in front of the store. Although a .25 caliber handgun was recovered from the dumpster, the officer was not able to determine if the gun was fired during the fight. He said police found no shell casings at the scene. The second officer testified that he recovered the handgun from the dumpster. He explained that a surveillance video recording from the store showed someone disposing of the weapon, but he was not aware of the identity of this person. Police did not open a case on the incident as none of the alleged complainants wished to pursue the matter. In support of presenting this testimony before the jury, appellant argued it would show an "M.O." for Richardson, that a .25 caliber gun was her "gun of choice," and that she planted the gun and drugs in the residence in exchange for police dropping any charge against her from the January 2 incident. The trial court ruled the proffered evidence was not relevant, and did not allow the jury to hear the officers' testimony.

> [T]here are two distinct scenarios in which rulings excluding evidence might rise to the level of a constitutional violation: 1) a state evidentiary rule which categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence which is vital to his defense; and 2) a trial court's clearly erroneous ruling excluding otherwise relevant, reliable evidence which "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." In the first category, the constitutional infirmity is in the arbitrary rule of evidence itself. In the second category, the rule itself is appropriate, but the trial court erroneously applies the rule to exclude admissible evidence to such an extent that it effectively prevents the defendant from presenting

10

his defensive theory. In other words, the erroneous ruling goes to the heart of the defense.

*Wiley v. State,* 74 S.W.3d 399, 405 (Tex.Crim.App. 2002) (footnotes omitted).

As we understand appellant's argument, he does not challenge a Texas evidentiary rule but argues the court's ruling fits the second scenario described in *Wiley* because it excluded his proffer of otherwise relevant, reliable evidence forming such a vital part of his defensive theory that he effectively was precluded from presenting a defense.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. "Evidence which is not relevant is inadmissible." Tex. R. Evid. 402. Evidence is relevant if it is material and probative. Steven Goode, Olin Guy Wellborn, III, and M. Michael Sharlot, 1 Texas Practice: Guide to the Texas Rules of Evidence § 401.1 (3d ed. 2002). To be material, the evidence "must be shown to be addressed to the proof of a material proposition, i.e., any fact that is of consequence to the determination of the action." *Id.* (internal quotation marks omitted). Evidence is considered probative if it "tends to make the existence of the fact more or less probable than it would be without the evidence." *Id.* (internal quotation marks omitted).

The Sixth and Fourteenth Amendments to the United States Constitution guarantee an accused a meaningful opportunity to present a complete defense. *Crane*

*v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986). It is equally clear, however, that the exercise of that opportunity does not preclude a trial court from excluding testimony that presents irrelevant or unreliable evidence. *See Crane*, 476 U.S. at 689-90 (Constitution gives trial judges "wide latitude" to exclude evidence that is only marginally relevant or poses undue risk of confusion of the issues); *Wiley*, 74 S.W.3d at 407-08 (no constitutional violation from exclusion of proffered testimony under Rule of Evidence 403). *Accord, Montana v. Egelhoff,* 518 U.S. 37, 42, 116 S.Ct. 2013, 2017, 135 L.Ed.2d 361 (1996) (*quoting Taylor v. Illinois,* 484 U.S. 400, 410, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988)) ("accused does not have an unfettered right to offer [evidence] that is . . . inadmissible under standard rules of evidence"); *United States v. Almonte,* 956 F.2d 27, 30 (2d Cir. 1992) (constitutional right to present a defense "does not give criminal defendants carte blanche to circumvent the rules of evidence").

Without abusing its discretion, the trial court here could have regarded the layers of hearsay included in appellant's proffered testimony made it unreliable as proof appellant's daughter was the person who put the .25 caliber handgun in the dumpster in January 2007. *See Stevens v. State,* No. 01-07-00111-CR, 2008 Tex. App. Lexis 5237, at *15-16 (Tex.App.--Houston 1st Dist. July 10, 2008, no pet.) (mem. op.) (not designated for publication) (hearsay evidence is unreliable because cross-examination is not available to test the veracity of the declarant). Also without abusing its discretion the court could have determined the facts purportedly shown by the evidence, that is, that Richardson possessed and disposed of such a handgun in January 2007, were not probative of any fact of consequence to the determination of appellant's guilt. Further,

the trial court could have determined that any relevance the evidence possessed was substantially outweighed by the danger of confusion of the issues involved in appellant's prosecution.  *See* Tex. R. Evid. 403; *Wiley*, 74 S.W.3d at 407-08 (Rule 403 supported exclusion of evidence of alternative perpetrator).  Such a conclusion by the trial court would have been supported by appellant's assertion the evidence showed a likelihood that police did not charge Richardson for her possession of the gun because she agreed to plant the drugs found in March on appellant.  Such speculation would not have aided the jury's determination of the issues properly before it in this case.  For all these reasons, we see no violation of appellant's constitutional right to present a defense from the trial court's exclusion of appellant's proffered testimony.  *See Wiley*, 74 S.W.3d at 405 (violation may occur from erroneous exclusion of "otherwise relevant, reliable evidence").  We overrule appellant's third issue.

## Conclusion

Having overruled appellant's three issues, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.

13