**Affirmed and Memorandum Opinion filed March 22, 2012.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

————————————

## NO. 14-11-00282-CR

————————————

**CEDRIC DEWAYNE ROBINSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Cause No. 1252784**

## MEMORANDUM OPINION

Appellant Cedric Dewayne Robinson was found guilty by a jury of capital murder, and the trial court sentenced him to confinement in the Institutional Division of the Texas Department of Criminal Justice for life without parole as required by law. On appeal, Robinson contends the evidence is legally insufficient to support his conviction for capital murder. He also contends that the trial court erred by admitting certain crime-scene photos into evidence and by instructing the jury that it could convict him under the law of parties. We affirm.

I

On the morning of January 5, 2009, the body of the complainant, Curtis Veazie, was found face down in a pool of blood behind a strip-center washateria on Wallisville Road in Harris County. There were socks on his feet, but no shoes, and his hands were tied behind his back with shoelaces. His ankles were similarly tied. The cause of death was determined to be a close-range gunshot wound and blunt force injuries to the head.

The complainant had spent the day before at a game room he frequented in the strip center. Around 1:00 a.m., employees of the game room were closing up when they heard gunshots. Shortly after that, one of the employees saw the complainant's vehicle, occupied by only the driver, come from the back of the washateria and leave the parking lot. Surveillance recording from a nearby auto-repair shop confirmed that the vehicle left the parking lot about that time.

The complainant's vehicle was later discovered abandoned in the Pine Trails subdivision near the strip center. A Harris County constable who responded to the abandoned-vehicle call found keys, a wallet with the complainant's driver's license, an insurance card, and latex gloves inside the car. A crime-scene investigator processed the car for evidence. He saw and photographed blood on the passenger door, the back of the driver's seat, and other areas inside. From the inside of the car and the trunk he recovered physical evidence including the complainant's wallet, which contained blood-stained credit cards, the complainant's driver's license, a pair of tennis shoes without laces, and a single boot with no laces. The investigator observed a large amount of clothing of various types in the trunk that he said could be consistent with someone living out of a car.

At trial, several witnesses connected Robinson to the crime. Whitney Shaw testified that she lived with her mother, sisters, and daughter in the Hunterwood Apartments, which were near the Pine Trails subdivision. She knew Robinson because he was the father of her best friend's child. Robinson went by the name "Turk" and he lived in Pine Trails with his mother. Whitney was at "Lo's" apartment the night of January 4, 2009, along with several

other people, including Robinson, "Piper," and "Junior." Around 10:00 or 11:00 p.m. that evening, she saw Robinson, Junior, and Piper "suiting up," meaning "[l]ike putting on clothes as though they was about to go do something." They had large, black guns, and Robinson was wearing gloves. The three left after suiting up.

The next day, Robinson was with Whitney and her younger sister. At some point, Robinson, who had been on the computer looking at the Fox 26 news website, told Whitney "about a man getting murdered and robbed" and told her "he did it." Robinson said he shot the man in the head and that "they got $3,000 from him." Robinson also told Whitney that the robbery and murder occurred "[b]ehind the washateria." Whitney then saw a news story about the crime on the computer that was consistent with what Robinson had said. Later, she told police that Robinson had confessed to her about robbing the man and shooting him in the head.

Cheryl Shaw, Whitney's mother, testified that she also knew Robinson as "Turk." She said that Turk came by her apartment around 3:00 p.m. on January 5, 2009, and told her about the complainant's murder. At first, he told her he had something he wanted to talk to her about, and he was leaning over against a car as if he were in pain. Robinson then told her that he "did something bad," explaining that he "hurt [someone else] bad," and shot him in the head.[1] He showed her what appeared to be "fairly fresh" blood on his shoe. Robinson said he knew the man was fifty-one years old because he had the man's ID in his hand. Robinson also told Cheryl that the crime occurred on Wallisville near a game room and a laundromat. When asked whether Robinson told her he was trying to get money or a car as a result of the crime, Cheryl stated without objection, "It was all - - that was what they did, they robbed people."

---

[1] Cheryl also testified that Robinson told her Piper and Junior, whom she had seen around there before, were with him. On cross-examination, however, Cheryl acknowledged that Robinson did not name Piper, and she had gotten his name from another source.

Donte Lamb, who was staying at an apartment in the Hunterwood Apartments around the time of the crime, testified that at around 10:00 or 11:00 p.m. on January 4, 2009, Robinson and Piper came in the apartment and Robinson grabbed a large black gun out of a closet and left. Lamb also knew Robinson as "Turk." Later, between 1:00 and 4:00 a.m. on January 5, Robinson came in Lamb's room and started talking. He told Lamb that he "shot a dude because he wouldn't stop moving" and "he tied him up and everything and put the "AK" to his head and shot him one time." Robinson also said that "he told him to shut up and he wouldn't stop." Robinson then left, telling Lamb that he was going to get rid of his clothes. Lamb later heard Robinson telling others: "I told him to shut up. I told him and he wouldn't shut up so I had to do what I had to do. He wouldn't shut up."

The State presented other testimony and evidence relevant to the crime. A sergeant with the Harris County Sheriff's office testified that he located, along a trail connecting the Hunterwood Apartments and Pine Trails subdivision, discarded clothing and a pair of gloves Whitney Shaw testified were similar to gloves Robinson always wore. A DNA analyst determined that Robinson could not be excluded as a contributor of DNA found on the shoelaces that bound the complainant's wrists. And a firearms examiner determined that the spent cartridge casing found at the scene of the murder was fired from an AK-47 rifle.

The jury found Robinson guilty, and this appeal followed.

II

In his first issue, Robinson contends the evidence is legally insufficient to support his conviction and sentence for capital murder because the evidence does not prove the necessary nexus between the complainant's murder and the taking of his property. Here, the State was required to prove that Robinson intentionally caused the death of the complainant by shooting him with a deadly weapon while in the course of committing and attempting to commit robbery. *See* Tex. Penal Code §§ 19.02(b)(1), 19.03(a)(2).

4

A

In evaluating the sufficiency of the evidence to support a criminal conviction, we view all evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper,* 214 S.W.3d at 13 (quoting *Jackson,* 443 U.S. at 318–19). The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony, and it is the exclusive province of the jury to reconcile conflicts in the evidence. *Mosley v. State,* 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). We do not reevaluate the weight and credibility of all the evidence or substitute our judgment for the fact finder's. *King v. State,* 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

B

Robinson asserts that the only evidence regarding what happened comes from the testimony of three witnesses who testified that Robinson told them after the fact about the murder, and "[n]one of those witnesses gave any evidence to support a finding that [he] shot the complainant with the intent to obtain control of [the complainant's] property." Robinson claims that because the complainant was "bound and gagged" he "obviously already had control of the complainant as well as his property" before he shot him, and therefore the State failed to prove that the murder occurred in order to facilitate the taking of the complainant's property. Robinson cites as support *Tolbert v. State*, in which the Court of Criminal Appeals noted that a finding that the appellant did not decide to rob the victim until after she murdered him would not constitute capital murder under Texas law.

5

*See* 306 S.W.3d 776, 777 (Tex. Crim. App. 2010) (citing *Ibanez v. State*, 749 S.W.2d 804, 807 (Tex. Crim. App. 1986) (a killing followed by an unrelated taking of property is not capital murder)).

We disagree with Robinson's characterization of the evidence. Among other things, the evidence shows that Robinson told Whitney Shaw about a man getting murdered and robbed behind the washateria on Wallisville, and he told her he did it. Robinson also told her he shot the man in the head and killed him, and said that "they got $3,000 from him." Cheryl Shaw testified that Robinson told her he shot somebody in the head, he had the man's identification card in his hand, and he said that the crime happened on Wallisville near a game room and laundromat. When asked about Robinson's intentions, Cheryl testified without objection that "[i]t was all - - that was what they did, they robbed people." Further, the police found the complainant's wallet in his abandoned car, and the credit cards in it had blood on them, consistent with Cheryl Shaw's testimony that Robinson told her he had the complainant's identification card in his hand. From this evidence a jury could also reasonably infer that the person who shot the complainant rummaged through his wallet.

When considered with the other circumstantial evidence in the case, the testimony of Whitney Shaw and Cheryl Shaw was sufficient to allow the jury to reasonably infer that Robinson intentionally shot the complainant while in the course of committing robbery. *See Robertson v. State*, 871 S.W.2d 701, 705–06 (Tex. Crim. App. 1993); *McGee v. State*, 774 S.W.2d 229, 235 (Tex. Crim. App. 1989). Because the jury could have reasonably concluded that Robinson committed the murder to facilitate stealing the complainant's property, case law involving a robbery committed as an afterthought and unrelated to a murder does not control our resolution of this issue. We conclude that the evidence is legally sufficient to support Robinson's conviction for capital murder and overrule his first issue.

In his second issue, Robinson contends the trial court erred by admitting into evidence certain crime-scene photographs depicting the complainant's body over Robinson's objection that their probative value was substantially outweighed by the danger of unfair prejudice. He contends that State's Exhibits 50, 53, and 56 were cumulative of a crime-scene video as well as State's Exhibits 47, 48, 52, and 54, which he complains showed the same or similar images.

Rule 403 of the Texas Rules of Evidence provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403. A court may consider many factors in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice, including: the number of photographs offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case. *Davis v. State,* 313 S.W.3d 317, 331 (Tex. Crim. App. 2010); *Williams v. State,* 301 S.W.3d 675, 690 (Tex. Crim. App. 2009). We evaluate the admissibility of photographs over an objection using an abuse-of-discretion standard of review. *Davis*, 313 S.W.3d at 331.

State's Exhibit 50 is a crime-scene photograph showing a head-first view of the complainant's fully clothed body on the pavement by a curb in an alley, and depicts the condition of the body and head wounds when it was found. State's Exhibit 53 is a crime-scene photograph showing a side view of the complainant's body with the head facing forward in a pool of blood. State's Exhibit 56 is a crime-scene photograph depicting the area under the complainant's head after his body was removed, and shows the location of a spent projectile near the pool of blood where the complainant's head had been.

Although the copies in our record are black and white, apparently the originals were in color.[2]

Robinson contends the crime-scene video admitted into evidence and shown to the jury depicts the same images as the photographs, thus making the photographs cumulative. The Court of Criminal Appeals has held, however, that a videotape and still photographs are not entirely cumulative of each other, as a videotape offers a panoramic view of the scene that still photographs often do not offer. *Ripkowski v. State*, 61 S.W.3d 378, 392 (Tex. Crim. App. 2001). This court has also held that videos and photographs are not necessarily cumulative of each other because each offers a different view of the evidence to the jury. *Flores v. State*, 915 S.W.2d 651, 652 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). Thus, the trial court could have concluded within the zone of reasonable disagreement that the danger of unfair prejudice did not substantially outweigh the probative value of the photographs.

Further, the complained-of crime-scene photographs are not so similar to State's Exhibits 47, 48, 52, and 54 that they can reasonably be viewed as merely cumulative. The complained-of photographs depict closer views, different angles, and in the case of State's Exhibit 56, different subject matter than State's Exhibits 47, 48, 52, and 54. Even assuming that some or all of the photographs were cumulative, Robinson has identified no basis for concluding that a reasonable trial judge would necessarily find that the photographs' probative value was substantially outweighed by their detrimental effect on the efficiency of the trial process. *See Alvarado v. State*, 912 S.W.3d 199, 212 (Tex. Crim. App. 1995).

Robinson also complains that the depictions in the complained-of exhibits "are obviously quite gruesome, primarily depicting a great deal of blood and gore." But the fact

---

[2] "If appellant believed that the colors in the actual photographs would have made a difference in our assessment of prejudice, it was incumbent upon him to ensure that either the original photographs or color photocopies were included in the record." *Williams v. State*, 958 S.W.2d 186, 196 n.10 (Tex. Crim. App. 1997).

that the photographs are gruesome does not, without more, render the probative value of the exhibits outweighed by any unfair prejudice. *See Narvaiz v. State,* 840 S.W.2d 415, 430 (Tex. Crim. App. 1992). The exhibits merely depict the crime scene and the condition of the victim's body. *See Williams,* 301 S.W.3d at 693; *Narvaiz,* 840 S.W.2d at 430. Therefore, we hold that the trial court did not abuse its discretion by admitting State's Exhibits 50, 53, and 56, and we overrule Robinson's second issue.

IV

In his third issue, Robinson contends the trial court erred in charging the jury on the law of parties over his objection when there was insufficient evidence to support such a charge. The trial court's charge included instructions on the law of parties which allowed the jury to convict Robinson of capital murder either as a principal or as a party to "Junior and/or Piper." Robinson argues that no witness testimony or other evidence established that Junior or Piper were involved in the complainant's murder as either principals or parties. But even if we assume the trial court erred, when the evidence clearly supports a defendant's guilt as a principal actor, any error by the trial court in charging on the law of parties is harmless. *Ladd v. State*, 3 S.W.3d 547, 564–65 (Tex. Crim. App. 1999). Here, the evidence discussed above clearly supports Robinson's guilt as a principal actor. We therefore overrule Robinson's third issue.

* * *

We affirm the trial court's judgment.

/s/     Jeffrey V. Brown
Justice

Panel consists of Justices Frost, Brown, and Christopher.

Do Not Publish — TEX. R. APP. P. 47.2(b).